# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
)
**THOMAS W. VANDER LUITGAREN,**      )
)
    **Plaintiff,**      )
)      **Civil Action No.**
    **v.**      )      **09-11410-FDS**
)
**SUN LIFE ASSURANCE COMPANY**      )
**OF CANADA,**      )
)
    **Defendants.**      )
_____)

## MEMORANDUM AND ORDER ON
## CROSS-MOTIONS FOR SUMMARY JUDGMENT

**SAYLOR, J.**

    This is a dispute about the use of "retained-asset accounts," a form of life insurance

benefits.  The matter arises under the Employee Retirement Income Security Act of 1974

("ERISA"), 29 U.S.C. § 1001, *et seq.*  Plaintiff Thomas W. Vander Luitgaren brought this suit

against defendant Sun Life Assurance Company on behalf of himself and a class of beneficiaries.

He alleges breaches of fiduciary duties under ERISA.

    Defendant has moved for summary judgment, and plaintiff has cross-moved for partial

summary judgment on the issue of liability.[1]  For the reasons set forth below, defendant's motion

---

[1] Plaintiff has also moved for class certification pursuant to Fed. R. Civ. P. 23(b)(3).  As a general rule, the question of whether a class will be certified should be resolved before the merits of an action are decided.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974).  This procedural preference exists to protect defendants from the potential for "one-way intervention," whereby absent class members may choose to remain in the class if the decision on the merits is favorable to them, but may elect to opt out of the class if the decision on the merits is unfavorable.  *See, e.g., Ahne v. Allis Chalmers Corp.*, 102 F.R.D. 147, 148-50 (E.D. Wis. 1984) (explaining one-way intervention).  However, defendants may waive this procedural order, and may opt to have the merits of an action decided first.  *Postow v. OBA Federal Sav. & Loan Ass'n*, 627 F.2d 1370, 1382-83 (D.C. Cir. 1980); *Katz v. Carte Blanche Corporation*, 496 F.2d 747, 762 (3d Cir. 1974), *cert. denied*, 419 U.S. 885 (1975); *Ahne,* 102 F.R.D. at 151.  Here, defendant has voluntarily waived its right to have class certification decided before the merits, and has asked the Court to evaluate the summary judgment motions first.  (Def. Opp. to Pl. Mot. for Class Cert. at 1).  Thus, plaintiff's motion for class certification remains pending.

for summary judgment will be denied in part and granted in part, and plaintiff's motion for

partial summary judgment will be denied.

## I.   Factual Background

The parties do not dispute any of the following facts.

In 2003, Perini Corporation purchased an insurance policy from Sun Life in order to fund

Perini's employee welfare benefit plan.  (Statement of Undisputed Facts in Support of Plaintiff's

Motions for Class Certification and Partial Summary Judgment ¶ 1).[2]  The insurance policy

guaranteed to the designated beneficiaries a guaranteed fixed sum upon the death of a plan

participant.  (DSF ¶ 1).  Perini Corporation was the designated plan administrator.  (DSF ¶ 3).

As such, Perini Corporation undertook various duties under ERISA, such as distribution of plan

information to participants and beneficiaries.  Sun Life was the claims administrator for claims

under the policy.   (DSF ¶ 4).

### A.   The Perini Policy

The group life insurance policy that Sun Life issued to Perini states as follows:  "[i]f Sun

Life receives Notice and Proof of Claim that an Employee dies while insured, then subject to the

Exclusions, Sun Life will pay the amount of life insurance in force on the Employee's date of

death."  (PSF ¶ 20).  It further provides:  "The Death Benefit may be payable by a method other

than a lump sum.  The available methods of payment will be based on the benefit options offered

by Sun Life at the time of election."  (PSF ¶ 21).  The policy does not provide further description

of the available methods of payment, nor does it explicitly mention Sun Life Financial Benefit

---

[2] For convenience, the Court will refer to the Statement of Undisputed Facts in Support of Plaintiff's
Motion for Class Certification and Partial Summary Judgment as "PSF" and Defendant's Statement of Undisputed
Facts as "DSF."

Accounts. (PSF ¶ 27).

### B.    Retained-Asset Accounts

A retained-asset account is an interest-bearing account established in the name of the beneficiary.  (DSF ¶ 13).  Beneficiaries are provided with a book of drafts that they can use for immediate access to all or part of the life insurance benefit.  (*Id.*).  No funds are actually placed into a retained-asset account when it is initially opened.  (DSF ¶ 14).  The insurer retains the amount of the benefit and continues to invest it.  (*Id.*).

During the period at issue here, the Sun Life retained-asset accounts operated as follows. When a valid claim was presented, Sun Life instructed its vendor to open a retained-asset account at State Street Bank & Trust Company.  (DSF ¶ 15).  The vendor or Sun Life then sent drafts to the beneficiary to allow him or her to access the funds.  (DSF ¶ 16).  The beneficiary could write out a draft for the entire amount of the benefit on the day that he or she received the drafts, or the beneficiary could opt to write out drafts in smaller amounts over time.  (DSF ¶ 17). Sun Life informed each beneficiary that interest would accrue on any undrawn balance.  (DSF ¶ 18).  The interest rate credited to the Sun Life Benefit Accounts was in Sun Life's sole discretion, and was not disclosed in advance to beneficiaries.  (PSF ¶ 39).

### C.    Payment to Vander Luitgaren

Thomas W. Vander Luitgaren's brother was employed by Perini Corporation and was a participant of the Sun Life employee welfare benefit plan.  (PSF ¶¶ 2, 7).  Vander Luitgaren's brother died on February 8, 2005.  (PSF ¶ 7).  Vander Luitgaren was the designated beneficiary under Perini Corporation's employee welfare benefit plan.  (PSF ¶ 3).

Following his brother's death, Vander Luitgaren submitted a claim for benefits under the plan. (PSF ¶ 7). Sun Life approved the claim on March 29, 2005, in the amount of $151,000. (Rossman Decl. Ex. 5). That same day, Sun Life opened a Sun Financial Benefit Account in Vander Luitgaren's name. (PSF ¶ 10). Sun Life then sent an approval letter and various other materials to Vander Luitgaren; these materials included a frequently-asked-questions sheet, an opening account statement, and a book of drafts to access the funds. (Rossman Decl. Ex. 5-7; DSF ¶ 16). In the enclosed materials, Sun Life informed Vander Luitgaren that his account would be credited with interest at a rate of 2% per year, although it retained the right to change this interest rate prospectively. (DSF ¶ 28).

On April 6, 2005, Vander Luitgaren wrote a single draft to himself in the amount of $151,000 and presented it for payment at National City Bank. (PSF ¶ 15). The draft was paid out in full. (PSF ¶ 16). On April 10, because the account balance had fallen below the required minimum balance of $250, State Street Bank closed Vander Luitgaren's account and mailed him a treasurer's check in the remaining amount of $74.48. (DNF ¶ 33). This amount represented the total interest credited to his account by Sun Life. (PSF ¶ 17).

## II.     Procedural Background

On August 24, 2009, plaintiff commenced this action on behalf of himself and other similarly situated persons by filing a complaint against defendant for breach of fiduciary duty under ERISA. Plaintiff later filed an amended complaint on September 19, 2009. He asserts that defendant was acting as a fiduciary under ERISA when it established a retained-asset account to pay him life-insurance proceeds and invested the funds backing that account for its own profit. He contends that in so doing, defendant breached its ERISA fiduciary duties to abstain from self-

4

dealing in plan assets and to act solely in the interest of plan participants and beneficiaries and for the exclusive purpose of providing benefits to them.

Defendant filed a motion to dismiss on October 26, 2009.  This Court found that the complaint had stated a plausible claim for breach of a fiduciary duty under ERISA and denied the motion.  *Luitgaren v. Sun Life Assur. Co.*, 2010 U.S. Dist. LEXIS 127620 (D. Mass. Nov. 18, 2010).

Defendant has now moved for summary judgment, and plaintiff has cross-moved for partial summary judgment on the issue of liability.

## III.   <u>Standard of Review</u>

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Essentially, Rule 56[] mandates the entry of summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  *Coll v. PB Diagnostic Sys.*, 50 F.3d 1115, 1121 (1st Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  In making that determination, the Court views "the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor."  *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009).  When "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'"  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).  The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present

affirmative evidence."  *Id*. at 256-57.

## IV.    Analysis

Plaintiff contends that defendant violated fiduciary duties under two provisions of

ERISA.  The first, ERISA Section 404(a), provides as follows:  "a fiduciary shall discharge his

duties with respect to a plan solely in the interest of the participants and the beneficiaries and for

the exclusive purpose of providing benefits to participants and their beneficiaries."  29 U.S.C. §

1104(a).  The second, Section 406(b), provides:  "[a] fiduciary with respect to a plan shall not

deal with the assets of the plan in his own interest or for his own account . . . ."  29 U.S.C. §

1106(b)(1).  A defendant is only liable for breach of its fiduciary duties imposed by these

provisions if it was "acting as a fiduciary (that is, was performing a fiduciary function) when

taking the action subject to complaint."  *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).

To determine whether defendant's actions violated its duties under ERISA, this Court

must first determine whether defendant was acting as a fiduciary under ERISA when it

established and maintained retained-asset accounts for the beneficiaries.  If so, the Court must

determine whether defendant's actions violated its fiduciary duties under Section 404(a) or

Section 406(b) of ERISA.

### A.    Fiduciary Relationship

The threshold question is whether Sun Life was acting as an ERISA fiduciary when it

took the actions subject to complaint.  In this case, those actions were the creation, investment,

and maintenance of retained-asset accounts for plaintiff.

#### 1.    Definition of "Fiduciary"

An ERISA fiduciary is defined "in *functional* terms of control and authority over the

plan." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993) (emphasis in original).   ERISA

provides that a person acts as a fiduciary with respect to an employee welfare benefit plan to the

extent he or she:

- exercises any discretionary authority or discretionary control respecting
  management of such plan;

-  has any discretionary authority or discretionary responsibility in the
  administration of such plan; or

- exercises any authority or control respecting management or disposition of plan
  assets.

29 U.S.C. § 1002(21)(A).

Plaintiff contends defendant was functioning as a fiduciary when it engaged in the

challenged conduct in two ways:  first, defendant's conduct involved in the exercise of authority

and control concerning the management and disposition of plan assets; and second, defendant's

conduct involved the exercise of discretionary authority and control in the administration and

management of the plan.

### 2.    Management and Disposition of Plan Assets

Plaintiff first contends that defendant was functioning as a fiduciary because its actions

involved the exercise of authority and control over plan assets.  To support this contention,

plaintiff asserts (1) that the funds backing retained-asset accounts are "plan assets" and (2) that

defendant exercised "authority and control" over those assets after it created retained-asset

accounts.  Defendant counters that the assets in Sun Life's general account were never "plan

assets" giving rise to fiduciary responsibilities, and that it was not exercising "authority and

control" over those assets once the retained-asset accounts were created.

The First Circuit and the Second Circuit, as well as two district courts, have recently

addressed similar questions as to whether an insurer of an employee welfare benefits plan

governed by ERISA acts as an ERISA fiduciary by exercising authority and control over "plan

assets."  These cases appear to point in opposite directions, and the parties here advance

divergent arguments concerning the applicability of the analysis set forth in each case.

Plaintiff contends that this case is governed by the First Circuit's decision in *Mogel v.

UNUM Life Insurance Co. of America*, 547 F.3d 23 (1st Cir. 2008).  Defendant counters that this

case is distinguishable from *Mogel*, and points instead to a Second Circuit case, *Faber v.

Metropolitan Life Insurance Co*., 648 F.3d 98 (2d Cir. 2011).  In the time since oral argument in

this case, district courts in Maine and Pennsylvania have both addressed the same question in

similar circumstances.  Those cases provide a useful framework for determining whether Sun

Life exercised "authority or control" over "plan assets" in this case.

### a.       *Mogel v. UNUM Life Insurance Co. of America*

In *Mogel*, the First Circuit ruled that benefits that took the form of retained-asset

accounts could remain "plan assets" until a beneficiary actually removed them from the account.

Under those circumstances, an insurance company with management or control over benefits

remained a fiduciary for purposes of ERISA.

The plaintiffs in *Mogel* were beneficiaries of an employee welfare benefit plan issued by

UNUM Life Insurance Company of America.   The policies at issue provided that "[u]nless

otherwise elected, payment for loss of life will be made in one lump sum."  *Mogel*, 547 F.3d at

25.  Despite this language, when plaintiffs (all beneficiaries under the policies) submitted valid

claims for death benefits to UNUM, the benefits were made payable in the form of retained-asset

accounts.  *Id*.  Until beneficiaries withdrew the funds, UNUM retained the funds backing the

account and invested them for its own profit.  *Id*. at 26.

Plaintiffs brought a putative class action, charging that UNUM had breached its fiduciary duties under ERISA both by failing to tender the lump-sum payment and by retaining and investing the funds backing the accounts for its own use and benefit.  *Id*.  UNUM moved to dismiss the action, and the district court granted the motion.

On appeal, the First Circuit vacated the judgment of the district court and remanded the case.  The court found that delivery of a checkbook was fundamentally different from delivery of the lump-sum payment mandated by the policies.  *Id*.  Until a beneficiary actually removed funds from the account, UNUM had the use of those funds for its own benefit.  *Id*.  The court reasoned that "[t]o say that the funds are 'deemed to belong' to the beneficiaries obscures the reality that UNUM had possession of them and enjoyed their use."  *Id*.  Accordingly, the court determined that "the sums due plaintiffs *remain plan assets* subject to UNUM's fiduciary obligations until actual payment."  *Id*. (emphasis added).  The court concluded that "the euphemistically named 'Security Account,' accompanied with a checkbook, was no more than an IOU which did not transfer the funds to which the beneficiaries were entitled out of the plan assets and hence UNUM remained a fiduciary with respect to those funds."  *Id*. at 27.

### b.    *Faber v. Metropolitan Life Insurance Company*

The Second Circuit reached a seemingly contrary result in *Faber*.  There, the court found that an insurance company discharged its fiduciary duties by creating a retained-asset account.

Plaintiffs were beneficiaries of two group life-insurance plans issued by Metropolitan Life Insurance Company.  The summary plan description for each policy provided that beneficiaries of death benefits above a certain amount would receive checkbooks to use for

9

withdrawing funds from a benefits account. *Faber*, 648 F.3d at 100-01. Plaintiffs (all beneficiaries under the policies) submitted claims for death benefits; the benefits were made payable in the form of retained-asset accounts. *Id*. at 101.

Plaintiffs then brought a putative class action lawsuit alleging that MetLife breached its fiduciary duties by retaining and investing the funds backing their retained-asset accounts for its own profit. *Id.* MetLife moved to dismiss the action, and the district court granted the motion.

On appeal, the Second Circuit invited the U.S. Department of Labor to submit its views on the issues presented. In its response, the DOL—the agency charged with administering Title I of ERISA—took the position that MetLife discharged its fiduciary duties by furnishing a retained-asset account in accordance with plan terms. *Id*. at 102. In the DOL's view, once MetLife created and credited beneficiaries' retained-asset accounts and provided checkbooks, the beneficiaries had "effectively received a distribution of all the benefits that the Plan promised," and "ERISA no longer govern[ed] the relationship between MetLife and the . . . account holder." *Id*.

The DOL also took the position that there were no "plan assets" at issue once a retained-asset account had been created. (Sec. of Labor's Amicus Curiae Letter in *Faber v. Metropolitan Life Ins. Co.*, Ex. 1 to Def. MSJ at 9). Whether particular assets are defined as "plan assets" is an issue typically determined by ordinary notions of property rights. *Id., citing In re Luna*, 406 F.3d 1192, 1199 (10th Cir. 2005) and *In re Halpin*, 566 F.3d 286, 289-90 (2d Cir. 2009). The DOL's opinion was that a plan's interest in particular funds depends on "whether the plan sponsor expresses an intent to grant such a beneficial interest or has acted or made representations sufficient to lead participants and beneficiaries of the plan to reasonable believe

10

that such funds separately secure the promised benefits or are otherwise plan assets."  U.S. Dep't of Labor, Advisory Op. No. 94-31A, at *7 (Sept. 9, 1994).  The agency reasoned that in *Faber*, the plan documents did not indicate any intent to give plan participants an ownership in interest in MetLife's assets.  (Sec. of Labor's Amicus Curiae Letter in *Faber v. Metropolitan Life Ins. Co.*, Ex. 1 to Def. MSJ at 10).  The agency concluded that, under ordinary notions of property rights, there was no basis for finding that the assets involved were "plan assets."

The Second Circuit adopted DOL's reasoning and affirmed the district court's dismissal. First, the court rejected the argument that the insurer retained "authority and control" over the assets.  The court affirmed the district court's reasoning that "once the [retained-asset accounts] were set up and credited, MetLife had provided all of the benefits promised by the Plans, in the manner contemplated by the Plans.  To the extent MetLife remained obligated to honor the account holder's "checks" and pay interest at a guaranteed rate, this arrangement constituted a straightforward creditor-debtor relationship governed by the Customer Agreements and state law, not ERISA."  *Id*. at 105.  Accordingly, MetLife's fiduciary obligations ended when, in accordance with the policies, it created and credited the beneficiaries' accounts.  *Id.* at 104.

The court also rejected the argument that the funds backing the retained-asset accounts were "plan assets." *Id.* at 105.  The court embraced DOL's approach of defining "plan assets" consistent with "ordinary notions of property rights" as persuasive and entitled to deference.  *Id*. at 106.  Applying that approach, the court found the retained assets were not "plan assets," because the plans did not have any ownership interest in them.  *Id*.  The court reiterated its earlier characterization of the relationship as involving "MetLife simply as a debtor and the beneficiary-turned-account holder simply as a creditor — a relationship fundamentally different

from an ERISA fiduciary relationship with its panoply of discretionary authority and responsibility." *Id.*

Finally, the court distinguished *Mogel* on the facts. The court suggested that the holding in *Mogel* was predicated on the fact that the insurer had failed to abide by plan terms requiring it to distribute benefits in lump sums. *Id.* at 106-07. It reasoned that the First Circuit's rationale "is not determinative here, where the [summary plan descriptions] expressly provide that MetLife will distribute benefits by the establishment of a [retained-asset account]." *Id.* at 107.

### c.   District Court Opinions

Two district courts have recently addressed cases on similar facts. In both cases, the courts rejected the argument that the defendant had breached its fiduciary duties under § 406(b) by self-dealing in "plan assets."

In *Edmonson v. Lincoln National Life Insurance*, 2012 WL 368367 (E.D. Pa. Feb. 3, 2012), the court addressed a claim of breach of fiduciary duty under ERISA based on an insurer's use of retained-asset accounts to pay life-insurance proceeds. In that case, the policy at issue did not specify a particular method by which death benefits were to be paid. *Id.* at *10. After an analysis of both *Faber* and *Mogel*, the court ultimately found the Second Circuit's rationale in *Faber* to be persuasive. The court reasoned that sponsors of employee welfare benefit plans are generally afforded wide latitude in plan design, including the mechanisms for distributing benefits. *Id.* at *12. Where, as in *Edmonson*, nothing in the policy prohibited the use of a retained-asset account, the plan sponsor was free to choose to structure payments through such an account. *Id.* The court determined that Congress did not "intend[] ERISA to be used as a mechanism for micro-managing a plan when it is silent as to the method of payment

and the plan administrator does not violate its terms in any way." *Id.* at *13.  Accordingly, the

court granted summary judgment on behalf of the defendant.  Notably, the court found both that

the insurer lacked "authority or control" over the management or disposition of the funds when it

retained and invested them for its own profit and that the funds backing the account were not

"plan assets." *Id.* at 11-14.

That same day, the District Court in Maine issued an opinion involving a virtually

identical claim. *Merrimon v. UNUM Life Ins. Co. of Am.*, 845 F. Supp. 2d 310 (D. Me. 2012).

The court looked to the opinions in both *Mogel* and *Faber* before determining the funds at issue

were not "plan assets." *Id.* at 318.  The court advanced a number of possible explanations for the

First Circuit's holding in *Mogel*. *Id.* ("Perhaps the First Circuit was saying that until whatever

payment promised under the plan is in the hands of the beneficiaries, the insurer has not met its

fiduciary obligation to dispose of the plan assets, *i.e.* the policies . . . It is also possible that the

First Circuit was adopting a functional test to determine whether the funds due beneficiaries

were "plan assets.").  Nonetheless, the court determined that *Mogel*'s core holding did not

require a finding that the funds at issue were "plan assets." *Id.*  Indeed, the court predicted that,

if the First Circuit were to address the issue squarely, it would hold that the funds are not "plan

assets." *Id*. at 319.  Accordingly, the court found the insurer had not engaged in self-dealing in

plan assets, and therefore had not breached any fiduciary duties under § 406(b). *Id.*

### d.    <u>Sun Life's Alleged Fiduciary Duties</u>

Plaintiff contends that this Court is bound by the First Circuit's holding in *Mogel*.

Plaintiff relies on the *Mogel* court's language that "the sums due plaintiff *remain* plan

assets . . . until actual payment," *Mogel* 547 F.3d at 26, in asserting that the contents of the

retained-asset account in this case are "plan assets."  This broad reading of *Mogel* ignores the

factual differences between the two cases and leads to an unnecessarily confusing interpretation

of ERISA.

It is undisputed that, prior to the moment when defendant created plaintiff's retained-

asset account, the funds at issue were not "plan assets."  The policies at issue in this case are

guaranteed-benefit policies—in other words, they entitle beneficiaries to a guaranteed amount in

benefits.  Under ERISA, when an insurer issues a guaranteed-benefit policy, it is very clear that

the assets in the insurer's general account do not become "plan assets."  29 U.S.C. § 1101(b)(2).

Instead, *the policy itself* becomes a plan asset.  *Id.*  Thus, and as both parties agree, prior to the

award of benefits Sun Life's assets were not "plan assets."

Plaintiff appears to argue that these assets were transformed into plan assets once

defendant established a retained-asset account in his name, and then "remained" plan assets until

he collected full payment.  This interpretation has been rejected by other district courts as an

incorrect reading of *Mogel*.  *See Merrimon,* 845 F. Supp. 2d at 317-18 ("Indeed, it is difficult to

understand how these amounts, which must be drawn from [insurer's] general account where

they have been sitting under the guaranteed benefit exemption up to the time of claim approval,

would *become* plan assets when following the approval of the death benefit they become due

directly to the beneficiaries.").  It is even more difficult to parse how, according to plaintiff's

interpretation of *Mogel*, these amounts could be deemed to *remain* plan assets at the instant that

they first *became* plan assets.

This Court agrees that *Mogel* should not be interpreted in such a confusing manner.

Rather, this Court understands *Mogel* as standing for the proposition that an ERISA fiduciary has

a responsibility to distribute benefits in accordance with the terms set forth in the plan documents.  Until payment is actually presented in the form required by the relevant policy, all existing fiduciary duties remain.

Given that the Perini policy did not promise a lump-sum payment, this case presents a different factual scenario than that addressed in *Mogel*.  In that case, the plan at issue specifically called for payment by lump sum.  The insurer failed to comply with the terms of the plan when it provided the benefits in the form of a retained-asset account, and the court found that the creation of the retained-asset account did not discharge the insurer's fiduciary obligations.  In contrast, the policy at issue here did not specify a particular method by which death benefits were to be paid.  Indeed, it explicitly stated that payment might be made in a form other than a lump sum, and that the method of payment would be determined based on benefit options offered by Sun Life.[3]  There is no dispute that, at all relevant times, retained-asset accounts were one of the benefit options offered by Sun Life.  Thus, when defendant set up and credited a retained-asset account, the insurer provided all the benefits promised in the policy in a form that complied with the terms of the policy.  At that time, all fiduciary duties involving the management and disposition of plan assets were discharged.  Defendant remained obligated to honor plaintiff's drafts, but its responsibility was no longer that of a fiduciary.  Rather, "this arrangement constituted a straightforward creditor-debtor relationship governed by the [policy documents]

---

[3] It is beyond question that ERISA allows for such an arrangement.  ERISA does not mandate any specific mode or manner in which benefits should be paid.  *Edmonson*, 2012 WL 368367 at *12.  Instead, the statute allows insurers to use discretion in designing the form and structure of benefit plans.  *Faber*, 648 F.3d at 104; *Lockheed Corp. v. Spink*, 517 U.S. 882, 894 (1996) ("ERISA leaves the question of the contents of benefits to the private parties creating the plan . . . .  The private parties, not the Government, control the level of benefits.") (internal quotations omitted).  Nothing in the text or legislative history of ERISA indicates that private parties may not agree to a benefits plan that provides for payment in a form other than lump sum.

and state law, not ERISA." *Faber*, 648 F.3d at 105.

Further, as was true in *Faber, Merrimon*, and *Edmonson*, the assets at issue here are not "plan assets." The Perini policy did not grant plan participants or beneficiaries any ownership interest in Sun Life's assets. Nothing in the plan descriptions or policy agreements suggests that Sun Life's funds would become "plan assets" once Sun Life gave a beneficiary access to his benefits. Applying ordinary notions of property rights, the funds remained Sun Life's assets, subject to the insurer's obligations under the policy to honor plaintiff's drafts against his retained-asset account.

Following the creation of plaintiff's retained-asset account, the assets backing that account were not "plan assets," and defendant was not exercising authority or control respecting management or disposition of plan assets when it created, invested, and maintained retained-asset accounts on plaintiff's behalf.[4] Accordingly, the Court finds that defendant could not have violated ERISA Section 406(b), which prohibits self-dealing in plan assets. Defendant is entitled to summary judgment on plaintiff's claim of breach of fiduciary duties under Section 406(b).

### 3.   Sun Life's Administration and Management of the Plans

Plaintiff also contends that defendant was functioning as a fiduciary because its actions involved the exercise of discretion in the management and administration of the plans. In

---

[4] This conclusion contradicts an earlier order in this case denying defendant's motion to dismiss. In that order, Judge Gertner stated, "The First Circuit has held that until a lump-sum check is cashed by the beneficiary, "the money due to the beneficiary is an asset of the plan . . . . Sun Life argues that the accounts represent only delays in the payment of benefits. If so, then fiduciary duties are active until the money is fully withdrawn from the individual retained asset accounts." *Luitgaren v. Sun Life. Ins. Co. of Canada*, 2010 WL 4722269, at *1 (D. Mass. Nov. 18, 2010). While this Court will generally avoid reconsideration of questions that have already been decided in this proceeding, the Court nonetheless retains the authority to correct itself. 18B Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure* § 4478.1 (2d ed.). Judge Gertner's statement was made early in the proceeding, without the benefit of additional briefing in this case and developments in the law in other jurisdictions. Upon further consideration, the Court finds that the facts are distinguishable from those in *Mogel*, and the First Circuit's ruling in that case is not controlling here.

particular, plaintiff points to defendant's authority to make final determinations regarding claims for benefits and to determine the interest rates to be credited to Sun Life Benefit Accounts as discretionary decisions in the management and administration of the plans.

Defendant urges this Court to reject plaintiff's argument for two reasons.  First, defendant contends that plaintiff has not identified a breach of any ERISA fiduciary duty where an insurer invests the monies in its own account when those monies are not "plan assets." Defendant suggests that to impose strict fiduciary duties in the absence of plan assets would be "contrary to the Supreme Court's directive that a structurally conflicted insurer's decision to deny benefits (and thus retain more of its own monies rather than pay those monies to participants or beneficiaries) is not actionable even if it is wrong so long as it is reasonable."  (D. Opp. to P. MSJ 14).   Furthermore, defendant asserts that in the absence of plan assets, plaintiff cannot demonstrate the requisite harm to entitle him to relief under ERISA § 502(a)(3). Defendant suggests that the only harm plaintiff alleges is the failure to turn over profits allegedly made on plan assets.  In the absence of plan assets, defendant contends, plaintiff was only entitled to the amount of the benefit.  Because plaintiff received the entirety of his benefit plus interest, defendant asserts that plaintiff is actually better off as a result of being paid by retained-asset account, and cannot recover under § 502(a)(3).

Defendant's contentions concerning the scope and nature of the harm suffered by plaintiff skip a step, as neither contention speaks to the threshold issue of whether defendant was functioning as a fiduciary at the relevant time.  The First Circuit has squarely addressed an insurance company's duties under ERISA with respect to payment due to a beneficiary once an insured's death occurs.  *Mogel*, 547 F.3d at 27.  The court stated that the disposition to the

17

beneficiaries of benefits under the plan "falls comfortably within the scope of ERISA's definition of fiduciary duties with respect to plan administration." *Id.*, citing *Varity Corp. v. Howe*, 516 U.S. 489, 502 (1996).

Accordingly, defendant was acting as a fiduciary with respect to plan administration at the time when it disposed of the benefits under the plan to the beneficiaries.  However, this does not mean that it was a fiduciary for all purposes at the time in question.  Fiduciary status is not an all-or-nothing proposition.  *Beddall v. State Street Bank & Trust Co.*, 137 F.3d 12, 18 (1st. Cir. 1998); *see also Johnson v. Georgia Pacific Corp.*, 19 F.3d 1184, 1188 (7th Cir. 1994) ("[P]eople may be fiduciaries when they do certain things but be entitled to act in their own interest when they do others.").  The language of ERISA states that a person acts as a fiduciary only *to the extent* he performs a defined fiduciary function.  *See Pegram v. Herdrich*, 530 U.S. 211, 225-26 (2000).  Where one performs merely ministerial, rather than discretionary, administrative functions, no fiduciary status arises.  *See, e.g. Pohl v. National Benefits Consultants, Inc.*, 956 F.2d 126, 129 (7th Cir. 1992).

Plaintiffs point to several ways in which defendant exercised discretion in the administration of the plans, and thus acted as a fiduciary:  (1) defendant determined the manner in which benefits would be paid when it elected to pay beneficiaries in the form of a retained-asset account, rather than another form of payment;[5] (2) defendant determined the interest rate to be credited to the retained-asset accounts in its "sole discretion"; (3) defendant chose to keep beneficiaries' money until it was called upon to transfer funds to the bank to cover drafts drawn

---

[5] Plaintiff appears also to contend that defendant's decision to pay beneficiaries in the form of a retained-asset account was in violation of the terms of the policy, which plaintiff claims expressly required a lump-sum payment.  (Plaintiff's MSJ at 20-21).  This argument is contrary to the clear text of the policies, which explicitly state that payment may be in a form other than a lump sum.

on the accounts; (4) defendant chose to invest the money for its own account in the interim; (5) defendant chose how much of the profits it earned on the money backing the retained-asset accounts would be credited in interest to the beneficiaries' accounts, and how much of the profits to keep for itself.

There is significant overlap in the discretionary decisions set forth by plaintiff. Specifically, the third and fourth "decisions" represent key features of all retained-asset accounts, and therefore cannot be considered separate discretionary acts; similarly, the fifth "decision" is simply a rephrased version of the second.  Nonetheless, plaintiff has set forth two ways in which defendant exercised discretionary authority in the administration of the plans, and thus acted as a fiduciary:  (1) in selecting to pay benefits through retained-asset accounts; and (2) in determining the interest rates to be credited to the retained-asset accounts.  Because defendant retained discretion with respect to these two elements of plan administration, defendant was acting as a fiduciary under ERISA when taking these actions.  *See Merrimon*, 845 F. Supp. 2d 310 (D. Me. Feb. 3, 2012) (granting summary judgment on issue of liability after holding that insurer was acting as fiduciary when it exercised discretionary authority in administering plaintiffs' retained asset accounts).

Having determined that defendant was functioning as a fiduciary, the Court must determine whether it breached its fiduciary duties when it determined the form of payment and the interest rates to be credited to Sun Life Benefit Accounts.

### B.     Alleged Breach of Fiduciary Duties

Section 404(a) requires plan fiduciaries to discharge their duties with respect to ERISA plans "solely in the interests of the participants and beneficiaries" and "for the exclusive purpose

of providing benefits to participants and their beneficiaries."  Here, plaintiff contends that

defendant chose to retain and invest benefits belonging to plaintiff and to members of the

proposed class through retained-asset accounts, and kept for itself portions of the profits

generated through such investments.  Plaintiff contends that such conduct violates ERISA 404(a)

because it was not undertaken solely in the interests of plaintiff and the members of the proposed

class, nor for the exclusive purpose of providing benefits to them.

At this stage in the litigation, there is not sufficient uncontested evidence to support the

conclusion that defendant breached its fiduciary duty by creating a retained-asset account and

providing a 2% interest rate.  On a motion for summary judgment, this Court must view the

record in the light most favorable to the non-moving party—in this case, Sun Life.  While it

might seem beyond dispute that defendant was acting in its own self-interest, and not solely in

the interest of the beneficiaries, in establishing the retained-asset account, nothing in the

uncontested statements of facts support such a conclusion.[6]

In so holding, this Court reiterates the conclusion of the court in *Merrimon* that the

retained-asset account method of payment is not in itself necessarily inconsistent with ERISA.

*Merrimon*, 845 F. Supp. 2d at 320.  As that court stated,

> *Mogel* does not stand for the broader proposition that the insurance company can
> never 'retain' plan assets and use them for its own benefit . . . .  The plan settlor
> generally has wide discretion to design an employee welfare benefit plan, *see*
> *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999), and the Plaintiffs
> have not pointed to any prohibition under ERISA against paying guaranteed-
> benefit claims through the establishment of [retained-asset accounts].  Indeed,

---

[6] In this regard, the facts in this case are distinguishable from those in *Merrimon*.  In awarding summary
judgment, the court in *Merrimon* was able to point to specific facts in the record that indicated the insurance
company was behaving to optimize its own earnings, and not those of the beneficiaries.  The court was able to
compare the insurer's interest rate to those of its competitors, as well as to examine the company's rationale for
setting the rate.  *Id.* at 319-20.  No such undisputed facts have been presented in the record here.

[retained asset accounts] are in some ways superior to lump sum payments in that they provide flexibility and at least some interest for people who are without a bank or who need time to consider their investment options.  It is inconsistent with ERISA's goals to prohibit this type of arrangement.

*Id.*

Further factual development is necessary to determine whether defendant breached its fiduciary duty to the plaintiff under ERISA Section 404(a).  Accordingly, summary judgment is inappropriate on this issue.

**V.**      **Conclusion**

For the foregoing reasons, defendants' motion for summary judgment is DENIED in part and GRANTED in part.  Plaintiff's motion for partial summary judgment is DENIED.


**So Ordered.**


/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated:  November 19, 2012

21